# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JASON GOLDSBY,<br><br>        Defendant. | 2:16-cr-00294-JCM-VCF<br><br>**Report and Recommendation**<br><br>MOTION TO SUPPRESS [ECF NO. 258] |

Before the Court is defendant Jason Goldsby's motion to suppress. (ECF No. 258). On April 23, 2021, the Court held an evidentiary hearing on the motion. (ECF No. 290). The Court recommends that the motion to suppress be denied. (ECF No. 258).

**I.        Background**

The government charged defendant Jason Goldsby (and several other co-defendants) in a 14-count superseding indictment.  (ECF No. 73). The charges stem from alleged robberies at various EZ Pawn businesses in the Las Vegas valley between the Spring and Fall of 2016. (ECF No. 221 at 1). Goldsby argues in his motion to suppress that Las Vegas Metropolitan Police ("LVMPD") Detective J. Nelson's September 20, 2016 search warrant affidavit contains false and misleading information: (1)

1  that Goldsby is a "known" or "close" associate of John Willoughby (a person of suspicion who the
2  government has not charged); (2) that when Detective Nelson searched the Cash America pawn records,
3  he learned that Goldsby had provided his telephone number as 702-542-7534 when he pawned a watch;
4  and (3) a pen register on Willoughby's phone revealed numerous calls between Willoughby and
5  Goldsby (i.e., the 7534 number). (ECF No. 258 at 3-4 and 28-29).

6        Goldsby argues that despite Detective Nelson's statement in the declaration of probable cause,
7  the only record of the pawned watch indicates that this was not the number provided in the August 1,
8  2016 "Cash America" pawn transaction." (*Id.* at 3-4). Goldsby argues that based on this inaccurate
9  recitation regarding the phone number used in the watch transaction, detectives obtained a search
10 warrant and pen register for the telephone number they attribute to Goldsby. (*Id.* at 4). Goldsby argues
11 that he is entitled to a *Franks* hearing and that all evidence obtained or derived from the warrant and pen
12 register ordered for Goldsby's number should be suppressed. (*Id.*)

13       The government argues in its response that there is evidence in the record that confirms
14 Detective Nelson's statements. (ECF No. 265 at 2). Regarding Willoughby the government argues that
15 (1) detectives (via surveillance) discovered someone driving an F-150 truck (registered to Willoughby)
16 leave the area where a (different) stolen truck used to flee one of the robberies had been abandoned and
17 (2) the Henderson Police Department received information from an anonymous citizen source that
18 Willoughby had previously been involved with robberies involving jewelry. (*Id.*). The government
19 alleges that LVMPD learned from Detective Condratovich from the Henderson Police Department that
20 Willoughby has a known associate named Jason Goldsby and that Goldsby had been seen driving the
21 F150 recently. (*Id.*) The government also alleges that there were numerous calls between Willoughby
22 [at a number ending in 0408] and Goldsby [at the 7534 number]." The government argues that Detective
23 Nelson's statement about Goldsby providing the 7534 number to Cash America when he pawned a
24 watch was a misstatement (thus not intentionally false) since Detective Nelson also knew that Goldsby
25

2

provided the same 7534 number to Gold Casters Jewelry when he pawned two watches one month earlier per the pawn records. (*Id.* at 7). The government argues that there is nothing false regarding Detective Nelson's statements regarding the pen register. (*Id.*)

Goldsby argues in his reply that the statement that Goldsby provided the 7534 number to Cash America is false and that the detectives in this case made broad accusations (regarding the link between Willoughby and Goldsby) without evidence to support the accusations or to amount to probable cause. (ECF No. 268 at 3-4). Detective Nelson testified at the evidentiary hearing; the parties presented arguments regarding the *Franks* analysis and regarding whether the Court should suppress evidence obtained because of the search warrant and pen register and any other evidence obtained as the fruits of this poisonous tree.

      **a. Testimony and arguments at the hearing regarding whether Goldsby is a "known" or "close" associate of John Willoughby**

At the evidentiary hearing Detective Nelson testified the Ford F-150 truck associated with the robberies had commemorative license plates with the letters "HHOGN" and based on his training and experience that the "HOG" stood for Henderson Original Gangster, which is a criminal street gang. Detective Nelson testified that he determined that the truck belonged to John Willoughby through a reference check through the Nevada Department of Motor Vehicles. Detective Nelson also testified on direct examination that as part of law enforcement protocol detectives share information with other agencies about current crime trends. Detective Nelson testified that he communicated with Detective Condratovich of the Henderson Police Department about the Las Vegas jurisdiction robberies because he knew that detectives were investigating the same suspects regarding the robberies in the Henderson jurisdiction. Detective Nelson testified that through his conversation with Detective Condratovich he learned that Detective Condratovich was familiar with the truck frequenting the Henderson area and that

a person by the name of Jason Goldsby (who lived in Henderson) was associated with the vehicle, was in the vehicle, and possibly driving the vehicle in Henderson.

Detective Nelson testified that his statement in the affidavit that, "[t]hrough investigation, I learned that Jason Goldsby (12-07-79) is a close associate of John Willoughby" that, "the investigation [he] was referring to in that sentence is two major things, that Jason Goldsby was seen in John Willoughby's truck. And [that] they're also part of the same gang." Detective Nelson testified that he believed that, "Detective Condratovich is familiar with the residents of Henderson" and that Detective Nelson, "would believe that it would be a close relationship because you'd have to have a certain amount of trust to have somebody drive your property and be responsible for your property." Detective Nelson testified on cross examination that the phrase "through investigation" in his affidavit referred to information he received from Detective Condratovich. Detective Nelson also admitted on cross that there is no document to confirm the validity of the information they received from an anonymous citizen source that John Willoughby had recently been involved with robberies involving jewelry, but Detective Nelson added that he included it in the search warrant because in his opinion it added to the validity of the investigation. Goldsby argued in closing that Detective Nelson's testimony shows that he did not know that Goldsby was a known associate of Willoughby through investigation, but rather that he knew it through conjecture.

   **b. Testimony and arguments at the hearing regarding whether Detective Nelson searched the Cash America pawn records and learned that Goldsby had provided his telephone number as 702-542-7534 when he pawned a watch**

At the hearing Detective Nelson admitted that his statement, that Goldsby provided the 7534 number to Cash America, was inaccurate. Detective Nelson testified on direct that "a records check showed that Jason Goldsby pawned a Scheyden watch with a serial number of 3298 on August 1st, 2016." Detective Nelson testified that by, "records check" he is referencing, "a program that [law enforcement] use[es] called Leads Online [which] is a nationwide database used by the pawnshop

4

companies to track property that they take in, and in theory it's supposed to be very specific to the type of property." Detective Nelson testified that in his experience, "the information from Leads Online tends to be very accurate -- or tends to be accurate." Detective Nelson testified that the 7534 number is attributed to Jason Goldsby pawning something at a different location (a Gold Casters store) and he admitted that there is no record of Jason Goldsby providing the 7534 number at any Cash America pawnshop transaction. Detective Nelson testified that, "the reason why I put the 7534 number was because it appeared that Jason Goldsby was using the 7534 number prior to and after the August 1st [Cash America] transaction but [he] did not provide that telephone number on August 1st itself." Detective Nelson also testified that he also linked Goldsby to the 7534 number through the jail call system with the Clark County. Detective Nelson testified that he listened to recorded jail calls to the 7534 number of, "a female inmate that had called Jason Goldsby in hopes of getting bailed out, to which [he] believe[s] he did, and during the phone call she refers to Jason Goldsby by the moniker of Goldie" which indicated to Detective Nelson, "that it's Jason Goldsby."

On cross-examination, Detective Nelson admitted that the information related to that August 1st Cash America transaction is the only one he referred to in his declaration and he testified that, "it was [his] error." Goldsby argued in closing that the statement in the affidavit that Goldsby provided the 7534 number when he pawned a stolen watch[1] on August 1st to Cash America is a material falsehood. Goldsby argued in closing regarding the Franks analysis that while he does not believe that Detective Nelson intentionally lied, he argues that Detective Nelson included this statement with reckless disregard for the truth.

---

[1] Per Detective Nelson's affidavit: "LVMPD Robbery Detective J. Beveridge checked the serial number through the EZ Pawn inventory list and found that the watch that Goldsby pawned was stolen in the EZ Pawn robbery on July 23rd, 2016 and reported under LVMPD event# 160723-2819." (See ECF No. 258 at 28.)

   c. **Testimony and arguments at the hearing regarding the pen register on Willoughby's phone which revealed numerous calls between Willoughby and Goldsby (i.e., the 7534 number)**

Detective Nelson testified that he obtained a pen register on Willoughby's cell phone on September 15th, 2015 and that, "the call detail records from the pen register" showed that there [were] numerous calls between Willoughby and Goldsby' meaning between Willoughby and the 7534 number. Detective Nelson clarified that the call detail records were found through a pen register and not a cell-site simulator. Detective Nelson testified that, "A pen register is a -- basically a device or it's a system that records the incoming and outgoing telephone number, the duration, and the numbers to -- that are – and sometimes some location information."

On cross examination, Detective Nelson admitted that he made use of information contained within Willoughby's search warrant to put in Goldsby's search warrant. In Goldsby's closing, he made additional arguments regarding template language that is pre-populated in the warrant affidavit[2] that, "Law enforcement is also requesting authorization to use a cell-site stimulator in order to determine the estimated physical location…Operations will be conducted to ensure minimal interference with non-target devices. Law enforcement will make no use of nor maintain any information collected or derived from non-target devices." Goldsby argued that law enforcement officers violated the pen register order when Detective Nelson used information gathered from Willoughby's pen register data to identify the 7534 number in the search warrant affidavit.

II. **Discussion**

The Fourth Amendment confers the right for people to "be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV.  To protect

---

[2] At the hearing Goldsby asserted that the government had not provided the Willoughby pen register to him despite multiple requests: it appears that the parties have now resolved this dispute. (See Goldsby's notice of no further pleadings in supplement to Goldsby's motion to suppress at ECF No. 291).

this right, under normal circumstances, law enforcement must procure a search warrant before they are able to legally invade the privacy of another. *Steele v. United States*, 267 U.S. 498 (1925). For a search warrant to be valid, it must be supported by an affidavit establishing probable cause. *United States v. Mayer*, 560 F.3d 948, 958 (9th Cir. 2009). The United States Supreme Court created the exclusionary rule as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011).

"A police officer has probable cause to conduct a search when the facts available to [him] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Fla. v. Harris*, 568 U.S. 237, 243 (2013) (citations, internal quotation marks, and brackets omitted). This is a "practical and common-sensical standard" that requires consideration of "the totality of the circumstances." *Harris*, 568 U.S. at 243 (citations omitted). This standard "is not reducible to 'precise definition or quantification,'" and the Supreme Court has expressly "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 243–44 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

There need only be "a fair probability that contraband or evidence of a crime will be found in a particular place" to support a finding of probable cause. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for…conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "[T]his 'substantial basis' standard of review embodie[s] the great deference that should be shown by reviewing courts to magistrates' probable cause determinations." *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984) (citation omitted).

This court does not, however, exhibit the same deference to the probable cause determination if there is a legal deficiency or error that requires the court to "correct" the warrant affidavit. *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014). ("Thus, after excising the [illegally obtained evidence],

[the court] must determine whether the remaining untainted evidence was sufficient to support issuance of the warrant. [The court] make[s] that determination without the usual deference owed to the magistrate's initial finding of probable cause.") (citation omitted).

"The validity of a search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit. An affidavit is sufficient if it establishes probable cause; that is, if the stated facts would reasonably allow a magistrate to believe that the evidence will be found in the stated location." United States v. Taylor, 716 F.2d 701, 705 (9th Cir. 1983). The United States Supreme Court held that a warrant affidavit should be corrected pursuant to Franks:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)

"[N]otwithstanding the defendant's interest in showing that a search warrant contained a false statement, 'there is, of course, a presumption of validity,'" attached to the warrant. *United States v. Napier*, 436 F.3d 1133, 1137 (9th Cir. 2006) (quoting *Franks v. Delaware*, 438 U.S. 154, 165, 171 (1978)). The defendant must demonstrate that the affiant intentionally or recklessly made a false statement or omission: mere negligence or inadvertence does not constitute a *Franks* violation. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988); *United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995); see also *United States v. Hole*, 564 F.2d 298, 302 (9th Cir. 1977) (holding that innocent

8

misstatements that are not intentional or reckless, even if material, will not vitiate an otherwise sufficient affidavit.)

A defendant must show that the affidavit could not support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985), (citing *Franks*, 438 U.S. at 171–72). A judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir.1995), and will be overturned only if it is "clearly erroneous." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir.1985). Suppression is an appropriate remedy if the judge issuing the search warrant was misled by information made in the affidavit that the affiant knew was false or would have known was false if not for his reckless disregard for the truth. *United States v. Leon*, 468 U.S. 897, 923 (1984).

**a. Analysis regarding whether Goldsby is a "known" or "close" associate of Willoughby**

Goldsby has not made a substantial showing that Detective Nelson's statement regarding his relationship with Willoughby was false or that Detective Nelson made misstatements deliberately or recklessly. Although the government did not charge Willoughby, law enforcement had reason to suspect at the time that Willoughby was involved in the robberies because detectives surveilled someone driving an F-150 truck (registered to Willoughby) leave the area where a (different) stolen truck used to flee one of the robberies had been abandoned and an anonymous source informed the detectives that Willoughby had previously been involved with robberies involving jewelry. Detective Nelson referenced documentary evidence in his affidavit that between September 15 and 19, 2016, that there are numerous calls between Willoughby and Goldsby at the 7534 number.

Goldsby also does not deny that he was seen driving the Ford F-150 truck seen at two of the robberies or allege that this statement was false. Goldsby also does not claim that Detective Nelson incorrectly reported statements made to him by other detectives or by the anonymous source: he takes

issue with the fact that there is no documentary evidence to support these portions of the investigation. The Court finds that Detective Nelson testified credibly regarding the information he collected and there is no indication that he misrepresented the statements of others. The scenario regarding Goldsby and Willoughby being "known or close" associates is presented as Detective Nelson's assessment of the events based on information available to him at the time, not facts written in stone. The defendant has not shown that any of Detective Nelson's statements about Goldsby's connection with Willoughby were false or made recklessly or deliberately in disregard of the facts.

> **b. Analysis regarding Detective Nelson's statement that Goldsby had provided the 7534 number when he pawned a watch at Cash America**

The Court does find, however, that Detective Nelson incorrectly stated that, "Jason Goldsby had provided his telephone number as 702-542-7534 when he pawned the watch." Detective Nelson admitted that it was his error and that the 7534 is attributed to Jason Goldsby pawning something at a different location. Several investigating detectives were involved in this investigation and Detective Nelson repeatedly admitted that he made an error when he said that Goldsby used the 7534 number when he pawned the stolen watch on August 1st at Cash America.

There is also documentary evidence through Leads Online that Detective Nelson had access to that shows that Goldsby used the 7534 number prior to and after the August 1st Cash America transaction. The Court finds that Detective Nelson's testimony is credible. The Court finds that Detective Nelson's false statement regarding the 7534 number was a good faith mistake and that Detective Nelson did not include it with reckless disregard for the truth. The Court also finds that this statement is not material to the finding of probable cause. While Detective Nelson's search warrant application did not inform the judge about the other records that showed that Goldsby had used the 7534 number prior to and after the August 1st Cash America transaction, this additional information would have bolstered, not negated probable cause to believe that Goldsby was involved in the robberies. The

failure to inform the judge of this additional information does not invalidate the warrant.

Assuming *arguendo* that Goldsby is correct and that the portion of Detective Nelson's statement referencing the 7534 number on August 1st should be stricken, probable cause still exists based on the totality of the circumstances. Detective Nelson's investigation informed him that Goldsby was a known associate of suspect Willoughby, there were multiple phone calls between Willoughby and the 7534 number, and the recorded jail calls to the 7534 number that Detective Nelson listened to wherein the inmate called him "Goldie." Detective Nelson testified that based on these recorded jail calls alone he believed that the 7534 number was Goldsby's number, and the Court finds that he testified credibly regarding that connection. Detective Nelson referenced the calls between Willoughby and jail calls in his affidavit. Also, the watch that Goldsby pawned was stolen, so regardless of the number he used on that occasion, his pawning of a stolen watch along with other evidence that connects Goldsby to the 7534 number is enough. Looking within the four corners of the affidavit, after excising reference to the 7534 number associated with the August 1, 2016, Cash America transaction, all these facts would reasonably allow a magistrate to believe that the 7534 number belongs to Goldsby and that Goldsby may be involved in the robberies. These facts are all sufficient for probable cause under the totality of the circumstances.

   **c. Analysis regarding the pen register on Willoughby's phone**

Detective Nelson's statements about the pen register on Willoughby's phone are not false or misleading. The Court further finds that law enforcement officers did not violate the pen register order when Detective Nelson used information gathered from Willoughby's pen register data and the call detail records to identify the 7534 number. The pre-populated form paragraph that law enforcement uses begins with, "Law enforcement is requesting authorization to use a cell-site stimulator…" and concludes with "Law enforcement will make no use of nor maintain any information collected or derived from non-target devices." The Court finds that this template language unambiguously references the cell-site

stimulator which means that law enforcement will not maintain information on non-target devices that are in the vicinity of the cell-site stimulator when law enforcement is triggering it. The Court finds that the phrase "non-target devices" limits law enforcement's ability to maintain information on devices in the vicinity of the cell site stimulator, not other references in the call record. Detective Nelson testified that he obtained Goldsby's number through Willoughby's call records, not via the cell site stimulator. Detective Nelson was authorized to gather information from Willoughby's calls and to use that information to further his investigation, including reporting the contents of those records in a search warrant affidavit.

ACCORDINGLY,

IT IS RECOMMENDED that defendant Jason Goldsby's motion to suppress (ECF No. 258) should be DENIED.

DATED this 20th day of May 2021.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE